FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 06 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

Rebecca Lynn Harber, )
Plaintiff, )
  ) Civil Action No._____
v. )
  )
OMAR EL SAWI, SOUTHERN CRESCENT TBI,
PIEDMONT HENRY HOSPITAL,
and CENITA COE

1:25-CV-4416

Defendants

## COMPLAINT

Plaintiff, complaining of the Defendants, alleges and says:

### PARTIES

1. Plaintiff Rebecca Lynn Harber is a resident of 7238 Conkle Road, Jonesboro, Georgia 30236.

2. Defendant Omar El Sawi is a resident of 2125 HWY 42N MCDONOUGH GA 30253.

3. Defendant Southern Crescent TBI is a medical facility formed under the laws of Georgia with a principal place of business in Henry County, Georgia.

4. Defendant Piedmont Henry Hospital is a hospital formed under the laws of 1133 Eagle Landing Parkway, Stockbridge, Georgia, 30281 with a principal place of business in Henry County, Georgia.

5. Defendant Cenita Coe is a resident of 660 Highpoint Way, Mcdonough, Georgia 30253.

### JURISDICTION AND VENUE

1

6. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331, because this action arises under federal laws including the Emergency Medical Treatment and Labor Act and HIPAA regulations (45 CFR § 164.502). This Court has supplemental jurisdiction over the state law claims pursuant to 28 USCS § 1367, as they form part of the same case or controversy.

7. This Court has personal jurisdiction over Defendant Omar El Sawi all actions took place within this district.

8. This Court has personal jurisdiction over Defendant Southern Crescent TBI all actions took place within this district.

9. This Court has personal jurisdiction over Defendant Piedmont Henry Hospital all actions took place within this district.

10. This Court has personal jurisdiction over Defendant Cenita Coe all actions took place within this district.

11. Venue is proper in this Court pursuant to 28 USCS § 1391, as a substantial part of the events or omissions giving rise to the claims occurred in Henry County, Georgia, which is within the Northern District of Georgia.

## STATEMENT OF FACTS

12. Plaintiff Rebecca Lynn Harber was the legal spouse and partner of Hershel Harber for 30 years.

13. Plaintiff held a lawful and properly written Advanced Medical Directive ("AMD") and Power of Attorney ("POA") under Georgia law, including under Ga Code Title 31

2

Chapter 32 31-32-13, to exercise medical care and other rights for her husband Hershel Harber.

14. Defendants Omar El Sawi, Southern Crescent TBI, Cenita Coe, and Piedmont Henry Hospital had actual knowledge or should have had actual knowledge that Plaintiff held an AMD and POA for her husband.

15. Hershel Harber was initially hospitalized at Halifax Hospital in Volusia County, Florida, before being transported back to Georgia.

16. Plaintiff and her husband held available insurance policies and Medicare benefits for Hershel Harber's health care.

17. Defendant Omar El Sawi is the owner of Defendant Southern Crescent TBI, operating and doing business in Henry County, Georgia.

18. Defendant Cenita Coe worked for Defendants Omar El Sawi and Southern Crescent TBI and was under their control and direction.

19. Defendants Piedmont Henry Hospital and Omar El Sawi and Southern Crescent TBI held a close business relationship.

20. In 2021, Hershel Harber was admitted to Southern Crescent TBI under a private pay agreement requiring prepayment of $3,500 per day.

21. Plaintiff signed this contract under significant pressure from out-of-state actors, including a Florida hospital and Adult Protective Services, creating an urgent, high-pressure environment that impaired Plaintiff's ability to evaluate options freely and without coercion.

22. Plaintiff was extorted and forced to cash out her 401K funds to pay for her husband's transfer to Georgia from the Halifax facility in Florida.

23. Defendants refused to consider Plaintiff's insurance coverage despite public representations that they accept a range of patients, including those with public and private plans.

24. On or about May of 2021, Defendant Omar El Sawi demanded an additional $60,000 in cash from Plaintiff for the care of her husband.

25. During this time, Hershel Harber became critical just four days after his arrival from Florida.

26. Defendants Omar El Sawi, Southern Crescent TBI, and Piedmont Henry Hospital ignored and disregarded Plaintiff's AMD and POA rights, including refusing to transfer her husband to Emory Hospital as she had requested.

27. Defendants Omar El Sawi, Southern Crescent TBI, and Piedmont Henry Hospital conspired and held Hershel Harber essentially as a prisoner and refused to transfer him to Emory as Plaintiff had requested.

28. While Plaintiff sought to contact the police and seek law enforcement assistance, Defendants Omar El Sawi, Southern Crescent TBI, and Cenita Coe instead conspired and wrongfully sought a false arrest of Plaintiff and the issuance of a felony warrant for aggravated assault against Plaintiff for allegedly assaulting her husband by taking a ventilator tube from his trachea.

29. These charges were later dropped and dismissed.

30. Hershel Harber passed away a few months later while Plaintiff was denied her fundamental rights under the First Amendment to have intimate and free expression and contact with her husband in his last months.

31. To date, no clear explanation has been given as to why insurance was denied, and refundable funds have not been returned despite multiple requests.

## CLAIMS FOR RELIEF

### Count I - Violation of the Emergency Medical Treatment and Labor Act (EMTALA) 42 USCS § 1395dd

**(against defendants Southern Crescent TBI and Piedmont Henry Hospital)**

32. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33. Defendants Southern Crescent TBI and Piedmont Henry Hospital are Medicare-participating hospitals.

34. Defendants failed to provide an appropriate medical screening examination for Hershel Harber.

35. Hershel Harber became critical just four days after his arrival from Florida, suggesting inadequate screening and care upon his admission to Defendants' facilities.

36. Defendants failed to stabilize Hershel Harber's known emergency medical condition.

37. Hershel Harber's condition deteriorated rapidly while under Defendants' care, indicating a failure to properly stabilize his condition.

38. Defendants improperly refused to transfer Hershel Harber.

39. Despite Plaintiff's requests and her legal authority under the AMD and POA to direct her husband's care, Defendants refused to transfer Hershel Harber to Emory Hospital where he could receive appropriate care.

5

## Count II - Tortious Interference with Statutory Rights

### (against all defendants)

40. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

41. Plaintiff had statutory rights under Georgia law to make medical decisions for her husband pursuant to a valid AMD and POA.

42. Plaintiff held a lawful and proper written Advanced Medical Directive and Power of Attorney under Georgia law, including under Ga Code Title 31 Chapter 32 31-32-13.

43. Defendants knew of Plaintiff's statutory rights.

44. Defendants had actual knowledge or should have had actual knowledge that Plaintiff held an AMD and POA for her husband.

45. Defendants intentionally interfered with Plaintiff's statutory rights.

46. Defendants ignored and disregarded Plaintiff's AMD and POA rights, including refusing to transfer her husband to Emory Hospital as she had requested.

47. Defendants' interference was improper.

48. Defendants had no legal justification for disregarding Plaintiff's authority under the AMD and POA.

49. Plaintiff suffered damages as a result of Defendants' interference.

50. As a direct result of Defendants' interference with Plaintiff's statutory rights, she suffered emotional distress, financial losses, and was deprived of her ability to ensure her husband received the care she believed was appropriate.

## Count III - Intentional Infliction of Emotional Distress

**(against all defendants)**

51. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52. Defendants' conduct was intentional or reckless.

53. Defendants deliberately engaged in a course of conduct designed to pressure, intimidate, and control Plaintiff, including forcing her to cash out her 401K, demanding additional payments, refusing to honor her AMD and POA, and ultimately having her falsely arrested.

54. Defendants' conduct was extreme and outrageous.

55. Defendants extorted money from Plaintiff, forced her to cash out her 401K, demanded an additional $60,000, conspired to have her falsely arrested on felony charges, and denied her the right to be with her husband in his final months.

56. Defendants' conduct caused Plaintiff emotional distress.

57. As a direct result of Defendants' actions, Plaintiff suffered severe emotional distress during an already difficult time as her husband was critically ill.

58. The emotional distress suffered by Plaintiff was severe.

59. Plaintiff suffered severe emotional distress as a result of being denied access to her husband in his final months, being falsely arrested, and the overall treatment by Defendants during a vulnerable time.

## Count IV - Concealment and Suppression of Evidence

**(against all defendants)**

60. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61. Defendants concealed or suppressed material facts.

62. Defendants refused to provide a clear explanation as to why insurance was denied despite public representations that they accept various insurance plans, and refundable funds have not been returned despite multiple requests.

63. Defendants had a duty to disclose these facts.

64. As healthcare providers and facilities entrusted with the care of Plaintiff's husband, Defendants had a duty to provide accurate information regarding insurance coverage, billing practices, and refundable funds.

65. The concealment was done with the intention of deceiving Plaintiff.

66. Defendants' concealment was part of a scheme designed to extract advance payment while limiting accountability and transparency.

67. Plaintiff relied on the concealment.

68. Plaintiff would not have agreed to the private pay arrangement or cashed out her 401K had she known the true facts regarding insurance coverage and refundable funds.

69. Plaintiff suffered damages as a result.

70. As a direct result of Defendants' concealment, Plaintiff suffered financial losses, including the loss of her 401K funds and the additional $60,000 demanded by Defendants.

**Count V - Violation of HIPAA Privacy Rule  42 USCS § 17935**

**(against defendants Southern Crescent TBI and Piedmont Henry Hospital)**

71. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

72. Defendants Southern Crescent TBI and Piedmont Henry Hospital are covered entities under HIPAA.

73. As healthcare providers, Defendants Southern Crescent TBI and Piedmont Henry Hospital are subject to the HIPAA Privacy Rule, including.

74. Defendants improperly used or disclosed protected health information.

75. Defendants may have improperly shared Hershel Harber's medical information with law enforcement without proper authorization when seeking Plaintiff's arrest, or failed to provide Plaintiff with access to her husband's medical information despite her holding a valid POA.

76. The disclosure was not permitted under HIPAA regulations.

77. Any disclosure of Hershel Harber's protected health information without Plaintiff's authorization as his legal representative with a valid POA would violate HIPAA regulations.

**Count VI - Violation of First Amendment Rights  USCS Const. Amend. 1,  42 USCS § 1983**

**(against all defendants)**

78. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

79. Plaintiff had a constitutionally protected right.

80. Plaintiff had fundamental US Constitutional rights under the First Amendment to intimate association and expression with her husband.

9

81. Defendants acted under color of state law.

82. Defendants worked in concert with law enforcement to have Plaintiff falsely arrested, thereby acting under color of state law.

83. Defendants' actions deprived Plaintiff of her constitutional rights.

84. Defendants denied Plaintiff proper contact with her husband in his last months, violating her constitutional rights to intimate association and expression.

85. Plaintiff suffered damages as a result.

86. As a direct result of Defendants' violation of her constitutional rights, Plaintiff suffered emotional distress and was deprived of the opportunity to be with her husband during his final months.

## Count VII - Malicious Prosecution

### (against defendants Omar El Sawi, Southern Crescent TBI, and Cenita Coe)

87. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 86 as if fully set forth herein.

88. Defendants instituted or continued a prosecution against Plaintiff.

89. Defendants Omar El Sawi, Southern Crescent TBI, and Cenita Coe conspired and wrongfully sought a false arrest of Plaintiff and the issuance of a felony warrant for aggravated assault against her.

90. Defendants acted with malice.

91. Defendants' actions in seeking Plaintiff's arrest were motivated by a desire to prevent her from exercising her rights under the AMD and POA and to maintain control over her husband's care and the associated financial benefits.

92. Defendants acted without probable cause.

93. There was no factual basis for the allegation that Plaintiff assaulted her husband by taking a ventilator tube from his trachea.

94. The prosecution terminated in Plaintiff's favor.

95. The charges against Plaintiff were dropped and dismissed.

96. Plaintiff suffered damage as a result.

97. As a direct result of the false arrest and prosecution, Plaintiff suffered emotional distress, damage to her reputation, legal expenses, and was further prevented from being with her husband during his final months.

## Count VIII - Breach of Contract

### (against defendants Omar El Sawi and Southern Crescent TBI)

98. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 97 as if fully set forth herein.

99. A valid contract existed between Plaintiff and Defendants.

100. Plaintiff signed a private pay agreement with Southern Crescent TBI for the care of her husband, requiring prepayment of $3,500 per day.

101. Plaintiff performed her obligations under the contract.

102. Plaintiff fulfilled her obligation by making the required prepayments, including cashing out her 401K.

103. Defendants breached the contract.

104. Defendants breached the contract by failing to provide adequate care, refusing to consider insurance that should have covered the care, demanding additional payments

11

beyond those agreed upon, and failing to return refundable funds despite multiple requests.

105. Plaintiff suffered damages as a result of the breach.

106. As a direct result of Defendants' breach, Plaintiff suffered financial losses, including the loss of her 401K funds, the $3,500 per day prepayments, and the additional $60,000 demanded by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

a. Compensatory damages against all Defendants in an amount to be determined at trial, but exceeding $75,000, for financial losses including funds from cashed 401K, $3,500 per day prepayments, additional $60,000 demanded, unreturned refundable funds, and other economic damages.

b. Damages against all Defendants for emotional distress suffered as a result of being denied access to her husband in his final months, being falsely arrested, and the overall treatment by Defendants during a vulnerable time, in an amount to be determined at trial.

c. Punitive damages against all Defendants in an amount to be determined at trial, to punish Defendants for their willful misconduct, malice, fraud, wantonness, oppression, or entire want of care.

d. An order requiring Defendants to return all refundable funds, provide complete medical records, and implement policies to prevent similar violations of patients' rights and advance directives in the future.

e. Attorney's fees and costs incurred in bringing this action.

f. Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

/s/ Rebecca Lynn Harber
Rebecca Lynn Harber
7238 Conkle Road, Jonesboro, Georgia 30236